**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 23-34-DLB**

**KHALIL COLEMAN**                                                                                           **PLAINTIFF**


**v.**                              **MEMORANDUM OPINION AND ORDER**


**KENTON COUNTY DETENTION CENTER**                                           **DEFENDANT**

**\*\*\* \*\*\* \*\*\* \*\*\***

Khalil Coleman is an inmate currently confined at the Roederer Correctional Complex in LaGrange, Kentucky.  Coleman has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. # 1) and a motion for leave to proceed *in forma pauperis*.  (Doc. # 2).  The Court has reviewed the fee motion and the financial information submitted by Coleman and will grant the request on the terms established by 28 U.S.C. § 1915(b).  Because Coleman has been granted *pauper* status in this proceeding, the $52.00 administrative fee is waived.  District Court Miscellaneous Fee Schedule § 14.

Because Coleman is a prisoner proceeding *in forma pauperis*, the Court must review his complaint prior to service of process and dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010).  At this stage of the case, the Court accepts all non-conclusory factual allegations in the complaint as true and liberally construes its legal claims in the plaintiff's favor.  *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

1

In April 2022, Coleman was found guilty of First Degree Robbery in Kenton County Circuit Court.  In August 2022, Coleman was sentenced to 10 years imprisonment.[1] Coleman filed this action in February 2023, complaining that beginning in April 2022, various conditions of his confinement at four different county jails violated his constitutional rights.  Coleman filed his complaint in the United States District Court for the Western District of Kentucky.  *See Coleman v. Kenton Cnty. Det. Ctr.*, No 3:23-CV-P86-GNS (W.D. Ky. 2023).  Upon initial review, the Western District concluded that Coleman's claims against each of the four jails and the Kentucky Department of Corrections belonged in separate suits, and ordered the matters severed into five distinct cases.  It further concluded that the proper venue for three of the severed matters was in this District, and transferred each of them to this Court pursuant to 28 U.S.C. § 1406(a). (Doc. # 4).

This case encompasses only Coleman's claims arising out of his confinement at the Kenton County Detention Center ("KCDC").  (Doc. # 4 at 3).  With respect to these claims, Coleman alleges as follows:

> On April 8th, 2022 I was convicted and housed at Kenton County [where] I began legal claims of being denied timely matters in filing motions which led to delay and missing deadlines.  These issues lasted until November 2022, where I was transferred out of punishment, where I missed an opportunity for a sworn affidavit to be included in my 60.02 relief motion under investigation.  Kenton County denied me a fair opportunity to [plead] my case in court by refusing me properly timed notarized documents and affidavits and due process to access the court representing pro se.

(Doc. # 1 at 4).

---

[1]     *See Commonwealth v. Coleman*, No. 21-CR-0294-1 (Kenton Cir. Ct. 2021), available at https://kcoj.kycourts.net/CourtNet/Search/CaseAtAGlance?county=059&court=1&division=CI&caseNumber=21-CR-00294-001&caseTypeCode=CR&client_id=0 (accessed May 5, 2023).

2

Apart from these discrete allegations regarding his confinement at KCDC, Coleman's complaint includes a series of broad and conclusory allegations, including the following:

> I have face serious discrimination practices with my ability to access court, represent my pro se, intimidation from request and grievance, frivolous transfers, lost of thousands of dollars in expenses, delay in legal affairs, inability to make stronger legal arguments because of lost evidence / affidavits, inability to study laws, false reporting on time of staff responses ... I have been subjected to inhumane conditions, mold in walls, cold shower water, freezing temperatures, harsh punishments, harassment and discrimination, denial of due process as a constitutional fundamental right.

(Doc. # 1 at 6-7).  Coleman does not clearly indicate at which facility these events occurred or conditions persist, or identify any person involved in the asserted violation of his constitutional rights.  Coleman names KCDC as the Defendant in the caption to his complaint (*id*. at 1), but later names Jailer Marc Fields in his official capacity as the Defendant.  (*Id.* at 2).[2]  Coleman seeks monetary damages and an injunction "enforcing law library; 45 day transfer to DOC" and "request change legislative DOC policies." (*Id.* at 8).

For purposes of conducting its initial screening role, the Court assumes (without deciding) that, as required by federal law, Coleman exhausted his administrative remedies with respect to his claims by filing appropriate inmate grievances and pursuing all available appeals.  *See* 42 U.S.C. § 1997e(a).  Even so, the Court concludes that Coleman's complaint must be dismissed for failure to state a claim for which relief may be granted.  At the outset, Coleman has not named a viable defendant to his claims relating to his confinement at KCDC.  While the caption of Coleman's complaint lists

---

[2]     These conflicting identifications of the Defendant are repeated in the summons tendered by Coleman.  (Doc. # 1-1 at 3).

KCDC itself as the Defendant (Doc. # 1 at 1), a county jail or detention center is just a building operated by an administrative department; it is not an independent legal entity that may be sued.  *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (holding county jail is a "department of the county" and "not a legal entity susceptible to suit"); *Marbry v. Corr. Med. Serv.*, 238 F.3d 422 (Table), 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (*citing Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that the Shelby County Jail is not subject to suit under § 1983)).

Because Coleman proceeds without counsel, the Court will liberally construe his claims against the detention center as against Kenton County.  *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint."); *Whittle v. Floyd*, 202 F.3d 271 (Table), 1999 WL 1336078, at *1 n.1  (6th Cir. Dec. 21, 1999) (claims against the county fiscal court amount to claims against the county itself) (citations omitted).  This is particularly appropriate in this case because, in another part of his complaint, Coleman lists Jailer Fields in his official capacity as the Defendant.  An official capacity claim against a person employed by a city or county seeks to hold the city or county that employs the officer liable where a policy or custom created by that municipality caused the deprivation of a federal right.  *Cady v. Arenac Co.*, 574 F. 3d 334, 342 (6th Cir. 2009). Therefore, Coleman's claims are construed as claims asserted against Kenton County, Kentucky.

A municipality or county government is only liable under Section 1983 when its employees cause injury by carrying out the county's formal policies or informal practices. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978).  To state a claim against

4

such a government entity, a plaintiff must identify in his complaint the specific policy or custom which he alleges caused his injury. *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010). Here, Coleman does not set forth facts indicating that such a policy exists or identify with particularity that county policy or custom, and thus he fails to state a claim for relief against the county. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Accordingly, Coleman's complaint fails to state a claim against either of the named Defendants. *See Bright v. Gallia County, Ohio*, 753 F. 3d 639, 660 (6th Cir. 2014); *Watson v. Gill*, 40 F. App'x 88, 90 (6th Cir. 2002).

In addition to the failure to identify an appropriate defendant, Coleman's complaint is also subject to dismissal on other grounds. As noted above, Coleman's allegations are by and large broad, conclusory, and not directed toward any of the five defendants originally named. The Supreme Court has explained that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Simply labeling the defendants' actions—whatever they might have been—as "negligent" or "discriminatory" deprives the defendants of notice of the conduct of which Coleman complains, notice to which they are entitled. Because the complaint does not provide any factual basis for the claims asserted, it must be dismissed for failure to state a claim. *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ("More than bare assertions of legal conclusions is ordinarily required

5

to satisfy federal notice pleading requirements."); *Kamppi v. Ghee*, 208 F.3d 213 (Table), 2000 WL 303018, at *1 (6th Cir. May 14, 2000) ("Thus, the less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations.")).

Coleman's complaint does suggest an intent to bring a claim based on allegations that his ability to timely file motions in his criminal case was impacted while he was housed at Kenton County because "Kenton County" refused him "properly timed notarized documents and affidavits and due process to access the court representing pro se." (Doc. # 1 at 4 ).  Coleman specifically refers to "missing an opportunity for a sworn affidavit to be included in my 60.02 relief motion under investigation."  (*Id*.).  But these allegations, which the Court construes as a claim regarding his access to the courts, fail to state a claim for several reasons.   The right of access to the courts guaranteed by the First Amendment "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However, "because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

Instead, to establish a claim that the jail has interfered with his right of access to the courts, a prisoner must show actual injury to a nonfrivolous claim.  *Id*. at 353-55. Coleman's complaint says nothing about the underlying facts or claims which he alleges he was prevented from asserting.  As the Supreme Court has explained:

6

> Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong.  However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. ... the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.

*Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002).  As Coleman makes no allegations about the underlying claims he wished to assert in his post-judgment motion, including both their factual basis and legal grounds, he fails to state a claim upon which relief may be granted. *See Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) ("Essentially, a claim for denial of access to the courts has unique pleading requirements: a plaintiff must plead a case within a case, alleging the law and facts sufficient to establish both the interference with his access to the courts, and the non-frivolous nature of the claim that was lost.").

Finally, while Coleman alleges that he was impeded in his efforts to file a post-conviction motion under RCr 60.02, he was represented by court-appointed counsel in state court when he filed that motion.  Coleman filed his motion for relief from the judgment in late August 2022, but his appointed attorney was not granted leave to withdraw from the case until January 30, 2023.  Because Coleman was represented by counsel, his right of access to the courts was satisfied as a matter of law.  *Cf. Holt v. Pitts*, 702 F. 2d 639, 640 (6th Cir. 1983) ("It is clear that counsel was appointed to represent him in both federal and state actions pending against him.  As a matter of law, therefore, the state fulfilled its constitutional obligation to provide him with full access to the courts."); *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011).  *See also Smith v. Hutchins*, 426 F. App'x 785, 788

7

(11th Cir. 2011) ("... a criminal defendant who seeks to proceed *pro se* has no right to access a law library to aid him in his own defense at trial where he has already been provided the option of legal counsel.") (collecting cases).  Therefore, Coleman's complaint will be dismissed.

For the foregoing reasons, **IT IS ORDERED** that:

(1)     Coleman's motion to proceed *in forma pauperis* (Doc. # 2) is **GRANTED**. Section 1915(b)(1) requires a prisoner-plaintiff to pay the $350.00 filing fee for a civil action as set forth below:

(a)     The financial documentation filed by Coleman indicates that he lacks sufficient income or assets to pay the initial partial filing fee required by 28 U.S.C. § 1915(b)(1)(A), and payment of such fee is therefore **DEFERRED**;

(b)     The Clerk of the Court shall open an account in Coleman's name for receipt of the filing fee.  The Clerk shall complete a Notice of Payment Form (Form EDKY 525) with (a) Coleman's name, (b) his inmate registration number, and (c) this case number.  The Clerk shall serve a copy of this Order and the Notice of Payment Form upon the Jailer/Warden of the institution in which Coleman is currently confined and upon the Office of the General Counsel for the Department of Corrections in Frankfort, Kentucky.

(c)     Each month Coleman's custodian shall send the Clerk of the Court a payment in an amount equal to 20% of his income for the preceding month out of his inmate trust fund account, but only if the amount in the account exceeds $10.00.  The custodian shall continue such monthly payments until the entire $350.00 filing fee is paid.  28 U.S.C. § 1915(b)(2).

8

(2)      Coleman's Complaint (Doc. # 1) is **DISMISSED**;

(3)      The Court will enter a corresponding Judgment; and

(4)      This action is **STRICKEN** from the Court's active docket.

This 5th day of May, 2023.



**Signed By:**

_**David L. Bunning**_

**United States District Judge**

K:\DATA\ORDERS\PSO Orders\2-23-34 Memorandum.docx